UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>RODRIGO SANDOVAL-BALTAZAR,<br><br>　　　　　　Defendant. | Case No. 1:25-cr-132-DLH<br><br>**DEFENDANT'S MOTION TO RECONSIDER ORDER GRANTING STAY** |

Rodrigo Sandoval-Baltazar moves this Court to reconsider its order granting the government's motion for a stay of the Magistrate Judge's release order. That order went beyond the motion to stay and reversed the release order. Because the order was based on incorrect legal standards, findings not established by clear and convincing evidence, improper burden shifting, and a denial of Mr. Sandoval-Baltazar's right to due process, the Court should reinstate the release order.

## I.　Procedural History

On 15 May 2025, a complaint was filed charging Mr. Sandoval-Baltazar with illegal reentry, in violation of 8 U.S.C. § 1326(a).[1] An affidavit accompanied the complaint.[2] According to the affidavit, on 14 May 2025, New Town Police conducted a traffic stop after observing Mr. Sandoval-Baltazar for "unsafely maintaining a

---

[1] Doc. 1.
[2] Doc. 1-1.

lane."³ Mr. Sandoval-Baltazar identified himself with a Mexican passport. The officer contacted border patrol.⁴ Border patrol learned Mr. Sandoval-Baltazar "had been previously removed from the United States," and had not been granted permission to reside in the United States.⁵ On scene, a border patrol agent spoke with Mr. Sandoval-Baltazar by telephone. Mr. Baltazar-Sandoval told the agent he was a Mexican citizen with "no documentation allowing him to remain in the United States."⁶ Mr. Baltazar-Sandoval was arrested and eventually transferred to the Portal Border Patrol Station.⁷ After finally being *Mirandized*, Mr. Baltazar-Sandoval invoked his right to remain silent.⁸

Border patrol later learned Mr. Baltazar-Sandoval had been removed from the United States via an expedited removal process on 12 June 2024.⁹ The next day he was again removed based on reinstatement of the 12 June 2024 order.¹⁰ Border patrol also learned Mr. Sandoval-Baltazar had no criminal history.¹¹

Five days after his arrest, on 20 May 2025, Mr. Sandoval-Baltazar appeared for his initial appearance.¹² At the hearing, the Court advised Mr. Sandoval-Baltazar of his rights and appointed counsel.¹³ The government moved for

---

³ *Id.* at p. 1.
⁴ *Id.*
⁵ *Id.*
⁶ *Id.*
⁷ *Id.*
⁸ *See id.* at p. 2.
⁹ *Id.*
¹⁰ *Id.*
¹¹ *Id.*
¹² *See* Doc. 3.
¹³ *Id.*

detention.[14] Mr. Sandoval-Baltazar objected to the motion, arguing the government had not demonstrated a valid reason under 18 U.S.C. § 3142(f)(2).[15] Over his objection, the Court scheduled a detention hearing for 22 May 2025 and ordered Mr. Sandoval-Baltazar's detention until the detention hearing.[16]

At the detention hearing, the government persisted in its motion for detention.[17] Mr. Sandoval-Baltazar requested release to live in Watford City, North Dakota.[18] He agreed to abide by release conditions set by the Court.[19]

The Court placed Mr. Sandoval-Baltazar on pretrial release.[20] The release order contained several conditions including reporting to pretrial services, restricting his travel "to the immediate area of his approved residence," refraining from possessing "a firearm, destructive device, or other dangerous weapon," residing at a verified and approved residence, and reporting any law enforcement contacts to pretrial services.[21]

The following day, the government moved for immediate stay of the release order.[22] The government sought a stay of the release order before it filed a separate motion "to pursue revocation of the release order pursuant to 18 U.S.C.

---

[14] *Id.*
[15] *See id.*
[16] *Id.*
[17] Doc. 11.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] Doc. 12.
[22] Doc. 13.

3

§ 3145(a)(1)."[23] According to the government, if the release order remained in place, ICE might "expeditiously remove him to Mexico."[24] If removed, the government argued this prosecution would be frustrated.[25] To thwart another department of the executive branch, the government moved the Court to stay Mr. Sandoval-Baltazar's release.[26] The government offered no other reason Mr. Sandoval-Baltazar should be detained.[27]

The same day the government moved for a stay, Mr. Sandoval-Baltazar filed a response in opposition.[28] Citing two district court cases, he argued his liberty interest outweighed the government's inability to convince ICE not to deport Mr. Sandoval-Baltazar before resolution of this case.[29]

Two weeks later, the Court *sua sponte* ordered Mr. Sandoval-Baltazar detained pending trial.[30] The government never moved the Court to reconsider the release order under 18 U.S.C. § 3145(1). But the Court revoked the release order without allowing either party a chance to address the merits. The Court found Mr. Sandoval-Baltazar was twice removed from the United States on 12 and 13 June 2024, had ties to a foreign country, and lacked ties to North Dakota.[31] So, the Court

---

[23] *Id.* at p. 1.
[24] *Id.* at p. 3.
[25] *Id.*
[26] *See id.*
[27] *See id.*
[28] Doc. 14.
[29] *Id.* at p. 2.
[30] Doc. 19.
[31] *Id.* at pp. 2-3.

found Mr. Sandoval-Baltazar "was a flight risk" and failed "rebut the presumption of detention."[32]

## II.   ARGUMENT

*In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.*

*United States v. Salerno*, 481 U.S. 739, 755 (1987).

The Bail Reform Act operates "only on individuals who have been arrested for a specific category of extremely serious offenses." *Salerno*, 481 U.S. at 750 (citing 18 U.S.C. § 3142(f)). And a detention hearing may only be held if one of the seven § 3142(f) factors is present. *See id.* at 747. Those factors are limited to cases involving seven circumstances:

- A crime of violence or a federal crime of terrorism;

- An offense carrying a life sentence;

- A drug offense carrying 10 or more years;

- Any felony if the defendant has at least two convictions for a crime of violence, a sentence carrying a life sentence, or a drug offense carrying ten or more years;

- Any felony involving a minor victim, a dangerous weapon, or failure to register as a sex offender;

- A serious risk a defendant will flee; or

- A serious risk a defendant will obstruct justice or intimidate a witness.

18 U.S.C. § 3142(f). The government bears the burden to show one of those circumstances is present. *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023). If

---

[32] *Id.* at p. 3.

5

none of those circumstances are present, there can be no detention hearing, and a defendant must be released. *See United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

### a. The Court had to determine whether Mr. Sandoval-Baltazar's release posed a serious risk of flight.

The charged offense does not fall within the categories of offenses in 18 U.S.C. § 3142(f)(1). Mr. Sandoval-Baltazar is charged with violating 8 U.S.C. § 1326(a).[33] The complaint alleged he was found in the United States without permission after being removed. The charged offense is not a crime of violence, a federal crime of terrorism, or a drug offense. *See* 18 U.S.C. § 3142(f)(1)(A)-(C). The maximum sentence possible is two years of imprisonment, not life or death. *See* 8 U.S.C. § 1326. And as stated in the affidavit accompanying the complaint and the bond report, Mr. Sandoval-Baltazar has not been twice convicted in any court for a crime violence, a crime carrying a maximum life sentence, or a drug offense carrying a maximum sentence of ten or more years.[34] *See* 18 U.S.C. § 3142(f)(1)(D). The government has never argued the charged offense involved a minor victim or a firearm. *See* 18 U.S.C. § 3142(f)(1)(E).

Before deciding if release was appropriate, the Court had to find the case involved a serious risk of flight. *See Cook*, 87 F.4th at 924. This is a two-step inquiry. *Id*. First, the threshold question requires a finding that the defendant

---

[33] Like the complaint, the indictment charged Mr. Sandoval-Baltazar with violating 8 U.S.C § 1326(a)
[34] *See* Doc. 1-1.

posed a serious risk of flight. If that is not present, a defendant cannot be detained. The second step involves weighing the factors under 18 U.S.C. § 3142(g) to determine if conditions of release could reasonably alleviate the risk of nonappearance. In the Court's *de novo* review, the Court made no finding that Mr. Sandoval-Baltazar was a *serious* flight risk.[35] Instead, it called Mr. Sandoval-Baltazar a "flight risk," and that his release "poses a risk of nonappearance[.]"[36] In the Court's *de novo* review, the Court made no finding that Mr. Sandoval-Baltazar was a *serious* flight risk.[37] Instead, it called Mr. Sandoval-Baltazar a "flight risk," and that his release "poses a risk of nonappearance[.]"[38] Without a finding of a serious risk of flight, under the Bail Reform Act, Mr. Sandoval-Baltazar cannot be detained.

**b. Mr. Sandoval-Baltazar's case does not involve a serious risk of flight.**

Ordinary "risk of flight" is not a threshold category under § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when a defendant poses a "*serious* risk" of flight. There is some risk of flight in every criminal case; "serious risk" of flight means something more. According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is]

---

[35] *See* Doc. 19.
[36] *Id*.
[37] *See Id*.
[38] *Id*.

that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (citation omitted).

Flight requires a volitional act. An ICE detainer does not pose a flight risk—let alone a serious one. "A risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017). Flight involves an element of volition. *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009). For example, it is an affirmative defense to the crime of failure to appear that uncontrollable circumstances presented a person's appearance. 18 U.S.C. § 3146(c). ICE's decision to detain Mr. Sandoval-Baltazar, or an immigration court's denial of bond or order to deport Mr. Sandoval-Baltazar, are not circumstances within Mr. Sandoval-Baltazar's control. Congress's concern about a flight risk under § 3142(f)(2)(A) does not include a "flight flown or paid for by a federal governmental agency." *Barrera-Omana*, 638 F. Supp. 2d at 1111. Thus, any potential for non-appearance or flight based on immigration proceedings involves no conscious act by Mr. Sandoval-Baltazar.[39]

And although an ICE detainer could disrupt Mr. Sandoval-Baltazar's prosecution, it is irrelevant to assess a risk of flight. Disruption among different arms of the Attorney General is not the Court's problem. *See Barrera-Omana*, 638 F. Supp. 2d at 1112 ("It is not appropriate for an Article III judge to resolve

---

[39] Indeed, the opposite is true: If in ICE custody, Mr. Sandoval-Baltazar cannot flee. So, the mere existence of immigration consequences poses no serious risk of flight.

8

Executive Branch turf battles.") Both ICE and the U.S. Attorney's Office maintain independent discretion to execute their statutory mandates. Both agencies can choose not to pursue (or, to some extent, when to pursue) their respective cause of action. But if those agencies proceed simultaneously with a removal proceeding and criminal prosecution, they must both operate within the law—here, the clear statutory direction from Congress. An ICE detainer, removal proceedings, and the prospect of deportation are circumstances that may disturb prosecution, but those circumstances do not create a serious risk of flight under § 3142(f)(2)(A).

Under the Court's reasoning, anyone with an "immigration history" is a flight risk.[40] Therefore, anyone charged with violating § 1326(a) should be detained. The Court effectively created a new category of detention-eligible offenses. But Congress is responsible for establishing categories of offenses eligible for detention, not the Executive or Judiciary.[41] An "immigration history" without more was not a sufficient basis to detain Mr. Sandoval-Baltazar nor was it a basis to even hold a detention hearing.

---

[40] The Court also noted Mr. Sandoval-Baltazar's "ties to a foreign country." Doc. 19, p. 3. But the Court did not explain how that makes Mr. Sandoval-Baltazar a flight risk. (Perhaps the reasoning that if released, he would flee to another country. That seems unlikely given the ICE detainer.) The government speculates the opposite will happen: If released, Mr. Sandoval-Baltazar would flee to *remain* in the country.
[41] In another part of the Bail Reform Act, a court may temporarily detain a removable alien for up to 10 days to allow ICE to take custody. *See* 18 U.S.C. § 3142(d)(2). This demonstrates Congress's enacted § 3142(f) knowingly full well ICE detainers could interrupt criminal prosecutions. Choosing not to enumerate immigration offenses under § 3142(f) shows Congress's intent to not detain defendants charged with immigration offenses.

Here, the "immigration history" included two prior contacts at the border on subsequent days in June 2024.[42] In the first instance, Mr. Sandoval-Baltazar was subjected to expedited removal.[43] The next day, he was caught, and the removal order was reinstated.[44] The record shows no instance of fleeing from immigration officers, providing deceitful statements, or otherwise trying to obstruct justice. Likewise, the record for this offense shows Mr. Sandoval-Baltazar cooperated with local and federal law enforcement officers upon his arrest. And there is no evidence he has failed to appear for court appearances. The record lacks instances of past conduct suggesting Mr. Sandoval-Baltazar would flee if released.

So, the government speculated Mr. Sandoval-Baltazar would flee to avoid deportation. The government argues, as it does in every § 1326(a) prosecution, there is a flight risk because § 1326(a) defendants will do whatever it takes to avoid being removed or deported.[45] Here, the only evidence of that is that Mr. Sandoval-Baltazar entered or attempted to enter the United States without permission three times. But the argument that he would flee to stay in the country is pure speculation unsupported by the record. There is neither evidence of a "serious risk of flight" nor clear and convincing evidence release conditions would not reasonably assure his appearance at future hearings.[46]

---

[42] *See* Doc. 1-1, p. 2.
[43] *Id.*
[44] *Id.*
[45] To date, the government has never provided a specific example of this happening in this district.
[46] The Eighth Circuit has held the threshold question of a serious risk of flight can be addressed at a detention hearing. *Cook*, 87 F.4th at 924.

### c. The Court's *sua sponte* detention order violated due process.

Assuming the Court has authority to reverse release orders *sua sponte*,[47] the Court did so without notice to either party. Release impacts Mr. Sandoval-Baltazar's liberty interests. Rescinding a release order without notice violates due process. At a minimum, the order denied Mr. Sandoval-Baltazar a right to be heard. The government's motion for a stay indicated the government intended to file a separate motion to seek reversal of the release order. Before the Court's order, the government had not done so. And Mr. Sandoval-Baltazar appropriately waited for the government's motion before responding to the merits of release. To revoke the release order without notice violated Mr. Sandoval-Baltazar's Fifth Amendment right to due process.

### d. The Court's order improperly shifted the burden to Mr. Sandoval-Baltazar.

The order concluded Mr. Sandoval-Baltazar "did not rebut the presumption of detention."[48] There was no presumption, and he had no burden. To detain a defendant pending trial, the government must show "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government must prove the risk of non-appearance "by clear and convincing evidence." *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc). For

---

[47] Under 18 U.S.C. § 3145, Congress set forth the procedure for the government and a defendant to challenge release or detention orders. The Bail Reform Act does not mention a district court's ability to reverse an order *sua sponte*.
[48] Doc. 19, p. 3.

cases involving § 3142(f)(1), a rebuttable presumption exists that "no condition or combination of conditions would reasonably assure" a defendant's appearance. To overcome the presumption, a defendant bears the limited burden of production—not persuasion—to establish evidence release does not pose a flight risk or endanger the community. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Because this case falls outside the § 3142(f)(1) categories, the Court improperly shifted the burden to Mr. Sandoval-Baltazar and relied on his perceived failure to meet that burden in its decision to detain him pending trial. The government bore the burden of proof, and it failed to carry it.

### III.   CONCLUSION

Given the procedural, factual, and constitutional errors in the Court's order detaining Mr. Sandoval-Baltazar, the Court should reconsider its order and reinstate the release order.

Dated this 20th day of June, 2025.

                Respectfully submitted,

                JASON J. TUPMAN
                Federal Public Defender
                By:

                /s/   *Christopher P. Bellmore*
                Christopher P. Bellmore
                Assistant Federal Public Defender
                Attorney for Defendant
                Office of the Federal Public Defender
                Districts of South Dakota and North Dakota
                Federal Square, Second Floor
                112 Roberts Street North, Suite 200
                Fargo, ND 58102
                Telephone: 701-239-5111
                Facsimile:  701-239-5098
                filinguser_SDND@fd.org